UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
                               :

UNITED STATES OF AMERICA      :
                               :

          - v. -             :                  S1 20 Cr. 631 (AKH)
                               :

KENNETH SPEARMAN,        :
   a/k/a "Big Man,"           :
   a/k/a "Big Fella,"         :
   a/k/a "Friend,"            :
TRISTAN OLIVER,          :
   a/k/a "Jay," and         :
REGINALD CLAXTON,        :
   a/k/a "Dread,"            :
   a/k/a "Reggie,"           :
                               :

                 Defendants.     :
------------------------------------------------------ X


# THE GOVERNMENT'S MOTIONS IN LIMINE


                                        DAMIAN WILLIAMS
                                          United States Attorney
                                          Southern District of New York
                                          One St. Andrew's Plaza
                                          New York, NY 10007


Ryan B. Finkel
Alexander Li
Andrew Rohrbach
Assistant United States Attorneys
       - Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

RELEVANT FACTS ............................................................................................. 2

DISCUSSION ........................................................................................................ 3

I.      The Court Should Allow the Introduction of Co-Conspirator Statements ........................ 3

II.     The Defendants Cannot Offer Their Own Out-of-Court Statements.................................. 8

III.    The Government Should Be Permitted to Offer Evidence of Spearman and Claxton's Drug Operations from 2012 to 2018 .................................................................................... 10

IV.     CS-1 and Undercover Officers Should Be Allowed to Testify Under Pseudonyms and Not Have Their Likenesses Sketched or Otherwise Recorded .................................. 15

V.      If a Defendant Attacks CS-1's Credibility in Opening Statements, Then CS-1's Prior Consistent Statements Are Admissible on Direct Examination ....................................... 17

VI.     If Spearman Testifies, He Can Be Impeached by Evidence of His Prior Felony Drug Conviction .......................................................................................................................... 18

VII.    Evidence or Argument Concerning the Punishment the Defendants May Face If Convicted Should Be Precluded. ....................................................................................... 22

VIII.   Evidence or Argument Concerning the Defendants' Family Backgrounds, Health Conditions, Ages, Financial Status, or Any Other Personal Factors Unconnected to Guilt Should Be Precluded.................................................................................................. 23

CONCLUSION ...................................................................................................... 24

## PRELIMINARY STATEMENT

The Government respectfully submits these motions *in limine* in advance of the trial of defendants Kenneth Spearman, Tristan Oliver, Reginald Claxton, (collectively, the "defendants"), scheduled to begin on June 15, 2022.  As set forth below, the Government seeks pretrial rulings:

(1) permitting the Government to offer co-conspirator statements;

(2) precluding the defendants from offering their own out-of-court statements;

(3) permitting the Government to offer evidence of Spearman and Claxton's drug operations from 2012 to 2018 as direct evidence of the charged crime, or in the alternative, under Federal Rule of Evidence 404(b) as proof of Spearman and Claxton's preparation, access, modus operandi, intent, and knowledge, to explain the relationship between Spearman, Claxton, and a confidential source ("CS-1"), and to complete the story of the crime;

(4) permitting CS-1 and undercover NYPD officers (the "UCs") to testify under pseudonyms and not have their likenesses sketched or otherwise recorded;

(5) if a defendant attacks CS-1's credibility, permitting the Government to offer CS-1's prior consistent statements on direct examination;

(6) if Spearman testifies, permitting the Government to impeach him by evidence of his prior felony drug conviction;

(7) precluding the defendants from offering evidence or argument concerning the punishment that the defendants may face if convicted; and

(8) precluding the defendants from offering evidence or argument concerning their family backgrounds, health conditions, ages, financial status, or any other personal factors unconnected to guilt.

## RELEVANT FACTS

Spearman, Oliver and Claxton are each charged in Indictment S1 20 Cr. 631 (AKH) (the "Indictment") with one count of conspiracy to distribute, and possess with the intent to distribute, 280 grams and more of mixtures and substances containing a detectable amount of cocaine base (crack cocaine).[1]

The Indictment stems from a yearlong investigation of a narcotics conspiracy that controlled three square blocks of territory in Manhattan—approximately from 120th Street and 7th Avenue to 123rd Street.  From approximately November 2019 through October 2020, law enforcement conducted dozens of undercover purchases from Spearman, Oliver, Claxton and other members of their conspiracy.  The reach and depth of the conspiracy is further evidenced by a Title III wiretap on Spearman's phones.  Through the course of hundreds of monitored calls, law enforcement officers recorded Spearman conducting narcotics transactions and directing others in the conspiracy.

Both Oliver and Claxton were members of the conspiracy who, as directed, delivered narcotics to customers, and collected proceeds.  For example, on numerous occasions, CS-1, a paid confidential source acting at the direction of law enforcement, placed a monitored call to Spearman to arrange a crack-cocaine purchase.  On approximately five of the resulting transactions, Spearman sent Claxton to deliver the crack cocaine and receive payment.  Oliver similarly delivered narcotics to CS-1 after CS-1 ordered crack cocaine from another member of the conspiracy.

---

[1] The Government has reached pretrial dispositions with defendants Harvey Foster and Joseph Campbell.  Change of plea hearings for both defendants have been scheduled.

In addition to the wiretap evidence, and controlled purchases, law enforcement conducted dozens of hours of surveillance including monitoring the conspiracy's control of their territory, sales to customers and Spearman's delivery of narcotics proceeds to his stash house several blocks away.

## DISCUSSION

### I.     The Court Should Allow the Introduction of Co-Conspirator Statements

The Government seeks to introduce the following types of co-conspirator statements at trial: (i) statements made by co-defendants concerning the narcotics conspiracy; (ii) statements made by uncharged co-conspirators concerning the narcotics conspiracy; and (iii) statements made by members of the conspiracy which were overheard or observed by individuals who were not themselves co-conspirators.  These statements are admissible not only under the hearsay exceptions for statements of a party opponent or a co-conspirator, but also to show the declarant's state of mind or, in the alternative, for the non-hearsay purposes of explaining the defendants' actions and providing context for the defendants' own statements.

### A.     Applicable Law

#### 1.   Party-Opponent and Co-Conspirator Statements

Rule 801(d)(2) provides in relevant part that a statement is not hearsay if it is offered against an opposing party and "was made by the party in an individual or representative capacity" or "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(A) & (E).  "To admit a statement under the coconspirator exception , a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy."  *United States v. Gigante*, 166 F.3d 75, 82 (2d

Cir. 1999); *see Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  "The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged."  *Gigante*, 166 F.3d at 82; *United States v. Lyles*, 593 F.2d 182, 194 (2d Cir. 1979) ("It is settled law that the conspiracy which serves as the vehicle for the introduction of a vicarious admission by a co-conspirator need not be charged in the indictment.").

The Court is not bound by the rules of evidence in assessing a proffered co-conspirator statement, and proof as to each prong may include other evidence, including hearsay statements. *See Bourjaily*, 483 U.S. at 178 ("Congress has decided that courts may consider hearsay" in making preliminary factual determinations relevant to Rule 801(d)(2)(E)).  "As [the Second Circuit] has repeatedly held, once a conspiracy is established, only slight, even circumstantial evidence is needed to link another defendant with it."  *United States v. Cota*, 953 F.2d 753, 758 (2d Cir. 1992).

To satisfy the "in furtherance" requirement, "the statements must be such as to prompt the listener—who need not be a coconspirator—to respond in a way that promotes or facilitates the carrying out of a criminal activity."  *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990).  This includes, "[i]n addition to the more obvious types of communications to implement a conspiratorial operation," statements that "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy."  *Id.* at 958-59.  "In addition, while idle chatter among conspirators does not satisfy the 'in furtherance' requirement of Rule 801(d)(2)(E), often these statements are admissible as declarations against penal interest or under the state of mind hearsay exception."  *Gigante*, 166 F.3d at 82.

2. <u>State of Mind</u>

Rule 803(3) sets forth a hearsay exception for a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3); *see United States v. Best*, 219 F. 3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."); *Shelden v. Barre Belt Granite Emp'r Union Pension Fund*, 25 F. 3d 74, 79 (2d Cir. 1994) ("[U]nder a long-established exception to the hearsay rule, the existence of the plan or intention [to do a given act] may be proven by evidence of 'the *person's own statements* as to its existence.'") (quoting 6 J. Wigmore, Evid. § 175 at 129) (emphasis in original)).

3. <u>Providing Context for Other Admissible Statements</u>

Statements by out-of-court declarants may also be offered for the non-hearsay purpose of giving context to other evidence, such as by establishing what various parties knew at relevant times. *See United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016) (admitting out-of-court statements by a non-defendant to two witnesses, because those statements were offered "to provide context for what [the witnesses] knew during their subsequent meeting with [the defendant]"); *United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir. 1995) (overruled on other grounds) (confidential informant's statements were not hearsay where offered not "to prove the truth of the matters asserted but only to render what [the defendant] said in these conversations intelligible").

This rule similarly extends to the admissibility of statements necessary to place in context the statements of a defendant's co-conspirators. *See, e.g.*, *United States v. Perez*, 2005 WL 2709160, at *2 (S.D.N.Y. Oct. 20, 2005) ("[I]t matters not whether the statements provide context for a defendant's statements that are admissible under Rule 801(d)(2)(A) or a co-conspirator's

5

statements that are admissible under Rule 801(d)(2)(E).  Rather, what matters is whether the statements for which the informant's statements provide context are hearsay.  Because the informant's statements are offered solely to place in context [a co-defendant]'s statements, which themselves are admissible non-hearsay pursuant to Rule 801(d)(2)(E) as statements by a co-conspirator of a party during the course and in furtherance of the conspiracy, the informant's statements are not hearsay." (internal citation omitted)).

      4.  <u>Confrontation Clause</u>

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI.  "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination."  *Ryan v. Miller*, 303 F.3d 231, 247 (2d Cir. 2002).

"To determine whether admission of an accusatory statement implicates the Confrontation Clause, a court must first determine whether the statement is 'testimonial' in nature."  *United States v. Van Hise*, 2013 WL 6877319, at *8 (S.D.N.Y. Dec. 31, 2013) (citation omitted).  Admission of a witness's statement that implicates a defendant, and that is testimonial in nature, is permissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  Where, however, a declarant's statement is not testimonial, "the Confrontation Clause poses no bar to the statement's admission."  *United States v. Williams*, 506 F.3d 151, 156 (2d Cir. 2007) (citation omitted).

Prior testimony and responses made during police interrogations are "testimonial."  *Crawford*, 541 U.S. at 51-53.  By contrast, statements made to someone the declarant believes to be a

co-conspirator or confidant are nontestimonial. *See, e.g.*, *Williams*, 506 F.3d at 155-57 (co-defendant's statements to non-law enforcement witnesses implicating himself and the defendant in shootings were non-testimonial).

## B.     Discussion

The Government seeks to introduce three categories of co-conspirator statements, all of which were made in furtherance of the charged conspiracy: (i) statements made by co-defendants concerning the narcotics conspiracy; (ii) statements made by uncharged co-conspirators concerning the narcotics conspiracy; and (iii) statements made by members of the conspiracy which were overheard or observed by individuals who were not themselves co-conspirators.

The Government expects the evidence at trial will include statements made by Spearman on various court-authorized wiretaps in furtherance of the narcotics conspiracy, such as coordinating the receipt and further distribution of narcotics and discussing individuals to whom the narcotics would be sold. The evidence will also include similar statements made by individuals who were not charged in this conspiracy[2] but who discussed with Spearman, or other co-defendants and uncharged co-conspirators, such things as taking orders for narcotics. These statements—most of which were made either by or to Spearman—were made in furtherance of the conspiracy and are thus admissible against the defendants.[3] *See* Fed. R. Evid. 801(d)(2)(E).

---

[2] Some of these individuals may be pure customers and not members of the conspiracy, *see, e.g.*, *United States v. Brock*, 789 F.3d 60 (2d Cir. 2015), but in those cases the statements of such customers are nonetheless admissible to provide context for the statements of the co-conspirators with whom they are speaking.

[3] While the co-conspirator statements of the sort proffered above are properly ruled admissible under Rule 801(d)(2)(E) for the reasons explained herein, the Government also notes that "statements proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendant existed. *United States v. Tracy,* 12 F.3d 1186, 1199 (2d Cir. 1993) (citing

That the various co-conspirators may have worked primarily with certain members of the conspiracy and had little direct interaction with other members of the conspiracy is immaterial.  It is well established that co-conspirators need not even know each other to be members of the same conspiracy, provided they have agreed to join the same common scheme.  *See United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989) ("The members of the conspiracy do not have to conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member.  There is no requirement that the same people be involved throughout the duration of the conspiracy.") (internal quotation marks and citations omitted); *see also United States v. Needham*, 377 F. App'x 84, 87 (2d Cir. 2010) ("Nor must a defendant participate in, or even agree to, every act undertaken on behalf of the alleged conspiracy in order to be culpable as a member.").

## II.     The Defendants Cannot Offer Their Own Out-of-Court Statements

The Government's proof at trial will consist, in part, of statements made by the defendants, including from the Title III intercepts, and cellphone text messages.  These statements, when offered by the Government, are not hearsay and are admissible as the statements of a party opponent or, as described above, co-conspirator statements.  *See* Fed. R. Evid. 801(d)(2)(A).

The same is not true, of course, for the defendants: "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *accord United States v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are hearsay, and . . . not admissible." (internal quotation marks omitted)).  Nor

---

*United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir. 1969)).

does the so-called "rule of completeness" somehow transform or "render admissible evidence that is otherwise inadmissible." *United States v. Terry*, 702 F.2d 299, 314 (2d Cir. 1983); Fed. R. Evid. 106. Instead, the rule of completeness requires admission of a hearsay statement only when the statement (or a portion thereof) is "*necessary* to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (emphasis added) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)). The burden of showing that some additional portion of a statement is necessary to clarify or explain the already-admitted portion of that statement rests with the defendant. *See United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

Accordingly, courts routinely preclude defendants from offering their own self-serving statements, including through cross-examination of the Government's witnesses. *See, e.g.*, *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (affirming trial court's preclusion of portion of tape that included defendant's "own self-serving statements"); *United States v. Bumagin*, 136 F. Supp. 3d 361, 375 (E.D.N.Y. 2015) ("Defendant is precluded from cross-examining the Government's witnesses in an effort to elicit exculpatory statements made by Defendant because such statements are inadmissible hearsay."). Under this well-settled law, the defendants should not be permitted to offer their own out-of-court statements, including statements made in on Title III intercepts, unless and until the defendants first establish that the statement is admissible pursuant to a hearsay exception or provision of law.

III.     **The Government Should Be Permitted to Offer Evidence of Spearman and Claxton's Drug Operations from 2012 to 2018**

The Government's evidence at trial will include the testimony of CS-1, who made controlled purchases of crack cocaine from Spearman, Claxton, Oliver, and other co-conspirators in 2020 at the direction of law enforcement. CS-1 had an extensive pre-existing relationship with Spearman and Claxton. In or around 2012, CS-1 began purchasing heroin from Spearman for CS-1's personal use. Based on that recurring relationship, on several occasions from approximately 2013 to 2015, Spearman paid CS-1 to drop off or pick up packages. CS-1 knew that the packages contained drugs or drug proceeds because in connection with at least two of the drop offs, CS-1 watched Spearman package hundreds of grams of crack cocaine before handing CS-1 the packages. From approximately 2015 to 2018, CS-1 transitioned into a crack cocaine customer, ordering crack cocaine from Spearman as often as twice a day. Spearman would frequently send Claxton to deliver the drugs to CS-1. On approximately 10 occasions during this period, CS-1 also saw Claxton cooking large quantities of crack cocaine at Spearman's premises and in Spearman's presence. Claxton also told CS-1 that Claxton was cooking crack cocaine. This evidence is direct evidence of the charged crime or, in the alternative, evidence admissible under Federal Rule of Rule 404(b) as proof of Spearman and Claxton's preparation, access to narcotics, modus operandi, intent, and knowledge relative to the charged conspiracy, and to understand the relationship between the participants and the story of the crime.

A.     **Applicable Law**

Where, as here, the defendant is charged with conspiracy, "uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (citations omitted); *see also United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999). Evidence of uncharged criminal activity is not considered other crimes evidence subject to Rule

404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)); *see also United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of 404(b); rather, it is part of the very act charged."); Weinstein's Fed. Evid. § 404.20[2][b] (2021) (evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs are "part of a single [charged] criminal episode" or "were necessary preliminaries to the crime charged").

In the alternative, Federal Rule of Evidence 404(b) provides that evidence of a crime, wrong, or other act, while inadmissible to prove propensity, may be admitted for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Second Circuit has long followed "an inclusionary approach to evaluating Rule 404(b) evidence . . . ." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003). Accordingly, "other acts" evidence is admissible under Rule 404(b) so long as "(1) it is introduced for a proper purpose, (2) it is relevant to the charged offense, (3) its prejudicial effect does not substantially outweigh its probative value, and (4) it is admitted with a limiting instruction if requested." *United States v. Rutkoske*, 506 F.3d 170, 176–77 (2d Cir. 2007).

**B.    Argument**

Evidence of Spearman and Claxton's narcotics operations from 2012 to 2018, which the Government expects to offer through the testimony of CS-1, is direct proof of the charged narcotics conspiracy for two primary reasons. First, that Claxton was hired by Spearman to, in essence, replace CS-1 as one of his runners provides necessary background to the conspiracy.

11

Courts have routinely held that evidence like this is admissible to explain how a conspiracy was formed and to provide background for the jury. *See, e.g., United States v. Canales*, 718 F. Supp. 2d 327, 328 (S.D.N.Y. 2010) (admitting uncharged conduct "as direct evidence of the charged conspiracy" because it was offered "for the purpose of explaining the background of the alleged conspiracy" as well as to "complete the story of the crime charged"); *United States v. Avendano*, No. 02 Cr. 1059 (LTS), 2004 WL 2734435 (S.D.N.Y. Nov. 30, 2004) (admitting evidence of agreement to distribute cocaine, which was not charged, as "inextricably intertwined with the evidence regarding the charged heroin conspiracy and necessary to complete the story of that alleged offense.")

*Second*, Spearman and Claxton's narcotics operations from 2012 to 2018 are inextricably intertwined with the charged crack conspiracy from in or about November 2019 to in or about November 2020. The evidence substantially overlaps in substance, method, and participants with the charged conspiracy. Both include conduct in which the same people (Spearman and Claxton) engaged in the same conduct (Spearman directing Claxton to deliver crack to others) in the same location (three blocks in Upper Manhattan). Although Spearman and Claxton's narcotics dealings from 2012 to 2018 predate the date range alleged in the Indictment, they are still highly probative of — and indeed, intertwined with — the charged crime. Courts routinely admit prior act evidence in such a circumstance. *See United States v. Awad*, 369 F. App'x 242, 245 (2d Cir. 2010) ("[T]he district court acted within its discretion in permitting the government to introduce evidence at trial of Mohamed's criminal acts that predate the beginning of the conspiracy charged in the Indictment."); *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007) (district court properly admitted acts that "predated the indictment period").

In the alternative, evidence of Spearman and Claxton's narcotics operations from 2012 to 2018 satisfies all four requirements of Rule 404(b).  Beginning with the first two:  the evidence is admissible for the proper and relevant purposes of establishing the relationship among CS-1, Spearman, and Claxton, and to complete the story of the crime.  In *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990), the Second Circuit held that a cooperating witness in a narcotics conspiracy case was properly permitted to testify about "his previous cocaine transactions" with the defendant in order "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed."  *Id.* at 804 (internal quotation marks, citations, and brackets omitted).  Similarly, in this case, evidence of CS-1's prior drug relationship with Spearman and Claxton would inform the jury how CS-1 came to be in a position of trust with Spearman and Claxton, why CS-1 was able to purchase crack cocaine from them without suspicion, how CS-1 can reliably identify the defendants and the drugs they were dealing, and how CS-1 knows the meaning of the drug lingo that Spearman and Claxton used.  The jury is entitled to this evidence to fully assess the credibility of CS-1.

Evidence of Spearman and Claxton's prior narcotics dealings with CS-1 is also admissible for the proper and relevant purposes of proving Spearman and Claxton's preparation, access to narcotics, modus operandi, intent, and knowledge with respect to the crack cocaine activities charged in this case.  In *United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir. 1988), the Third Circuit held that a cooperating witness's testimony about his prior cocaine dealings with the defendant was admitted for the proper purpose of proving that the defendant "had access to a source of large quantities of cocaine and was preparing to establish a large scale drug business" and as "evidence of preparation" that was "highly probative of [the defendant's] subsequent organization

of, and participation in, the charged conspiracy." Similarly, in this case, CS-1's prior narcotics dealings with Spearman and Claxton demonstrate Spearman and Claxton's preparation, access to narcotics, and modus operandi (e.g., Spearman sending Claxton to make deliveries). For similar reasons, the prior acts evidence is also highly probative of Spearman and Claxton's intent and knowledge with respect to the charged drug crime. *See United States* v. *Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) ("Where, for example, the defendant does not deny that he was present during a narcotics transaction but simply denies wrongdoing, evidence of other similar narcotics involvement may, in appropriate circumstances, be admitted to show knowledge or intent.").

Turning to the third Rule 404(b) factor, the probative value of Spearman and Claxton's prior narcotics operations is not substantially outweighed by any prejudicial effect. This evidence, which will "represent[] only a tiny fraction of the testimony heard by the jury," does not "involve conduct any more sensational or disturbing" than the narcotics conspiracy with which the defendants are charged. *Id.* at 804. Indeed, Spearman and Claxton's prior narcotics activities are essentially the same narcotics operation charged in the Indictment, continued into the preceding years. "[G]iven that the prior transactions are substantial similar to, and not particularly inflammatory in light of, the charged conduct there is little danger of unfair prejudice to the defendant." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004) (Leisure, J.).

Finally, the Court can guard against any potential prejudice to the defendants with a limiting instruction to remind the jury that Spearman and Claxton are not on trial for any offense other than the charged offense, and that the evidence of their prior narcotics operations should only be considered for the purposes of evaluating their preparation, access to narcotics, modus operandi, intent, and knowledge relative to the charged conspiracy, and to understand the relationship between the participants and the story of the crime.

14

**IV.    CS-1 and Undercover Officers Should Be Allowed to Testify Under Pseudonyms and Not Have Their Likenesses Sketched or Otherwise Recorded**

CS-1 and undercover NYPD officers should be permitted to testify under pseudonyms, and without disclosing other personally identifiable information in public, in order to mitigate risks to their safety, safety of any relatives, and to not disrupt other unrelated investigations.

A defendant does not have an absolute right to publicly disclose the identity of the Government's witnesses at trial.  Rather, he must be given an opportunity "to place the prosecution's witness in their proper setting and to test the weight of their testimony and their credibility before the jury." *Alford v. United States*, 282 U.S. 687, 692 (1931).  Thus, the confrontation rights of the accused are not absolute and should yield where threats to a witness are "actual and not the result of conjecture." *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969); *see also United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977) ("[W]here the government voices a legitimate concern for a witness' safety, the trial court must balance the potential danger to the witness against the need of the defense for the information."); *United States v. Marti*, 421 F.2d 1263, 1265-66 (2d Cir. 1970).

Courts in this District have allowed Government witnesses to testify at trial without disclosing their true identities.  *United States v. Hernandez*, No. 12 Cr. 809, 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013) (Castel, J.) (permitting agent to testify under pseudonym); *see also, e.g.*, *United States v. Campo Flores*, No. 15 Cr. 765 (PAC) (S.D.N.Y. 2016); *United States v. Muntslag*, No. 13 Cr. 635 (SAS) (S.D.N.Y. 2016) (dkt. no. 78); *United States v. Urena*, 8 F. Supp. 3d 568, 572-73 (S.D.N.Y. 2015); *United States v. Garavito Garcia*, No. 12 Cr. 839 (JSR) (S.D.N.Y. 2015); *United States v. Akasha*, No. 14 Cr. 716 (VM) (S.D.N.Y. 2018) (dkt. no. 135) (granting Government request to permit confidential sources to testify under pseudonyms, though charges were ultimately resolved by guilty plea); *accord United States v. Loera*, No. 09 Cr. 466, 2018 WL

2744701, at \*5-6 (E.D.N.Y. 2018); *United States v. Marcus*, No. 15 Cr. 457, 2007 WL 330388, at

\*1-2 (E.D.N.Y. Jan. 31, 2007);  *United States v. Naseer*, No. 10 Cr. 19 (E.D.N.Y. 2015) (dkt. no.

382) (permitting members of the United Kingdom Security Service to testify at trial using pseudo-

nyms based on concerns relating to safety and ongoing investigations).

Courts outside this Circuit have similarly concluded that a witness's use of a pseudonym

during testimony, or limiting cross-examination regarding personally identifiable information, is

appropriate under certain circumstances.  *See United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th

Cir. 2012) (affirming district court decision to allow two government witnesses from El Salvador

to testify under pseudonyms without revealing their names, home and work addresses, or dates

and places of birth due to safety concerns); *United States v. El-Mezain*, 664 F.3d 467, 491-92 (5th

Cir. 2011) (affirming district court decision to allow foreign law enforcement witnesses to testify

under pseudonyms); *United States v. Celis*, 608 F.3d 818, 832-34 (D.C. Cir. 2010) (holding, in the

context of trial of defendants with ties to a Colombian terrorist organization, that a protective order

allowing government witnesses from Colombia to testify under pseudonyms, and limiting disclo-

sure of their true identities, did not impermissibly intrude upon defendants' confrontation rights);

*Clark v. Ricketts*, 958 F.2d 851, 855 (9th Cir. 1991) (finding no violation of the Confrontation

Clause where a DEA confidential informant testified at trial under a pseudonym, because the de-

fendant knew the witness's name before testifying and, therefore, had an opportunity to investigate

and conduct cross-examination).

The requested protective measures relating to CS-1 and any undercover officers are appro-

priate because the safety risks faced by CS-1, and his loved ones, "actual and not the result of

conjecture." *Palermo*, 410 F.2d at 472.  Indeed, CS-1 played a meaningful role in the Govern-

ment's investigation and conducted dozens of controlled narcotics purchase, placed monitored

calls and provided law enforcement officers information.  The defendants, and others in the conspiracy who have already pleaded guilty, may blame their criminal charges on CS-1 and seek to exact revenge placing CS-1 and others CS-1 cares for in peril.  Further, CS-1 is engaged in other law enforcement investigations thus revealing his identity could disrupt legitimate law enforcement operations.  The same is true of undercover officers who may be called to testify.  They are, or will again be, involved in law enforcement investigations.  Disclosing their identities could interfere with their ability to conduct additional investigations and also place them and their loved ones in danger.

The Government will also disclose CS-1's actual name to defense counsel in connection with the production of Jencks Act and *Giglio* material, which will allow counsel to conduct an adequate investigation, prepare a defense, and conduct cross-examination.  The defendant will also have the opportunity to confront CS-1 in open court, under oath, and the jury will have a full opportunity to assess CS-1's demeanor and credibility.  Therefore, allowing CS-1 to testify under a pseudonym, precluding questioning that will elicit personally identifiable information, and preventing efforts to capture CS-1's likeness during the trial, will not violate the defendant's confrontation rights.

## V.    If a Defendant Attacks CS-1's Credibility in Opening Statements, Then CS-1's Prior Consistent Statements Are Admissible on Direct Examination

Federal Rule of Evidence 801(d)(1)(B)(i) provides that the prior consistent statement of a testifying declarant, who is subject to cross-examination about the prior statement, is not hearsay if offered either "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying," or "(ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."

The defendants may attack CS-1's credibility in opening statements. In that event, the Government should be permitted to introduce on direct examination the prior consistent statements made by CS-1 to law enforcement during the course of the investigation, including CS-1's debriefs in connection with controlled purchases made by CS-1 from the defendants. *See United States v. Flores*, 945 F.3d 687, 704–06 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 375 (2020) (testifying agent's written notes and reports properly admitted as prior consistent statements on direct examination when defendant challenged in opening statements the agent's memory and suggested the agent had a recent motive to fabricate or embellish); *United States v. Burrell*, 43 F. App'x 403, 406 (2d Cir. 2002) (cooperating witness's prior consistent statement properly admitted because defendant "argued in her opening statement that the cooperating witnesses had a motive to lie"). For example, during four controlled purchases of crack cocaine made through Spearman — July 31, 2020, August 12, 2020, August 25, 2020, and October 6, 2020 — Claxton told CS-1 that Spearman had sent Claxton to deliver the crack cocaine. The Government should be permitted to introduce CS-1's contemporaneous reports to law enforcement in order to rebut any attack made against CS-1's credibility.

## VI.   If Spearman Testifies, He Can Be Impeached by Evidence of His Prior Felony Drug Conviction

On or about August 29, 2002, Spearman was arrested and subsequently convicted in Oneida County Court of criminal possession of a narcotics drug in the fourth degree, in violation of New York Penal Law § 220.09(1) (the "Prior Narcotics Conviction"). Under New York law, this offense is a Class C felony. N.Y. Pen. L. § 220.09(1). On or about May 23, 2003, Spearman sentenced principally to a term of imprisonment of 54 months to 9 years. On or about December 17, 2008, Spearman was released on parole, which was discharged on or about December 20, 2010.

18

Should Spearman testify, evidence of the Prior Narcotics Conviction is admissible to attack his character for truthfulness pursuant to Federal Rule of Evidence 609.

As relevant here, Rule 609 sets forth two rules for impeachment by criminal conviction. First, Rule 609(a)(1)(B) provides that evidence of a felony conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Second, Rule 609(b)(1) provides that "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[, e]vidence of the conviction is admissible only if: its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." If admissible under Rule 609, "inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required by the Rule, subject to balancing under Rule 403." *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005).

Should Spearman testify, evidence of the Prior Narcotics Conviction should be admitted as impeachment evidence pursuant to Rule 609(a)(1)(B). Although Spearman's release from confinement predates trial by more than ten years, evidence of the Prior Narcotics Conviction passes the limitation of Rule 609(b)(1) because its probative value "substantially outweighs" its prejudicial effect.

"In weighing the probative value of the evidence of the prior conviction against its prejudicial effect, courts in this Circuit consider the following factors: [1] the impeachment value of the prior crimes, [2] the date of the conviction and the Defendant's subsequent history, [3] the degree of similarity between the past crimes and this crime, [4] the centrality of the Defendant's credibility in this case, and [5] the importance of the Defendant's testimony." *United States v.*

*Brown*, 606 F. Supp. 2d 306, 311–12 (E.D.N.Y. 2009).  These factors, on balance, strongly favor admission of the Prior Narcotics Conviction.

**Impeachment Value.**  "The Second Circuit has recognized that offenses involving controlled substances can be valuable for impeachment purposes."  *United States v. White*, 312 F. Supp. 3d 355, 359 (E.D.N.Y. 2018).  Although "[d]rug convictions involving possession, as opposed to drug smuggling or large-scale distribution, are generally considered less valuable for impeachment purposes," *id.*, Rule 609 "presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."  *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005).  The first factor therefore weighs in favor of admission.

**Age of Conviction and Subsequent History.**  Spearman was released from prison on the Prior Narcotics Conviction in 2008, approximately fourteen years ago.  The age of the conviction "decrease[s] its probative value but [does] not require exclusion."  *United States v. Weichert*, 783 F.2d 23, 26 (2d Cir. 1986).  Because Spearman has no subsequent felony convictions, it would be "unfair and misleading to the jury" to allow him to appear "pristine" while taking the stand, as discussed below.  *United States v. Ortiz*, 553 F.2d 782, 785 (2d Cir. 1977).  The second factor therefore weighs only slightly against admission.

**Similarity to the Charged Crime.**  Because the Prior Narcotics Conviction is similar to the charged narcotics offense, there is a degree of "prejudice to [the defendant] that inevitably results from the introduction of a conviction for the same crime as that for which he is on trial."  *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977).  But unlike the instant narcotics conspiracy, the alleged object of which is the distribution and possession with intent to distribute crack cocaine, the Prior Narcotics Conviction requires only possession of a sufficient quantity of narcotics.  *See* N.Y. Pen. L. § 220.09(1) ("A person is guilty . . . when he knowingly and unlawfully

20

possesses . . . mixtures or substances containing a narcotic drug . . . of an aggregate weight of one-eighth ounce or more").  Because the Prior Narcotics Conviction is a possession offense, rather than a distribution offense, it certainly does not involve "conduct any more sensational or disturbing than the crimes with which [the defendant] was charged."  *Roldan-Zapata*, 916 F.2d at 804 (examining prejudice in the context of Rules 403 and 404).  The third factor therefore weighs only slightly against admission.

**Centrality of the Defendant's Credibility and Importance of His Testimony**.  Should Spearman testify, he would presumably dispute the core of the Government's case:  that he is the leader of a drug trafficking organization who directed crack cocaine sales in a three-block area of Harlem.  Because much of the Government's evidence will consist of the testimony of CS-1, who made numerous controlled purchases from Spearman and his subordinates, the jury would have to compare the credibility of Spearman and CS-1.  *See United States v. Thomas*, 214 F. Supp. 3d 187, 196 (E.D.N.Y. 2016) ("If Defendant testifies, his testimony would likely contradict the testimony of the Government's witnesses; in such a circumstance, evidence of Defendant's prior convictions would be highly probative for the jury to determine his veracity and credibility.").  This was precisely the dynamic in *Ortiz*, where the Second Circuit stated that it would have been "unfair and misleading to the jury" to "have allowed appellant, if he chose to take the stand, to appear 'pristine'" in comparison to the Government's witness, who "had an extensive criminal record, which was brought out by the prosecution and then thoroughly exploited on cross-examination."  Similarly, in this case, CS-1 has an extensive criminal history that the Government expects to explore at trial.  To permit Spearman to falsely appear "pristine" in comparison to CS-1 would mislead the jury.  The fourth and fifth factors therefore weigh strongly in favor of admission.

21

The probative value of the Prior Narcotics Conviction substantially outweighs any preju-

dicial effect.  Should Spearman elect to testify, the Government should be permitted to introduce

evidence of the Prior Narcotics Conviction so that the jury may fairly evaluate his testimony in the

case.

## VII.   Evidence or Argument Concerning the Punishment the Defendants May Face If Convicted Should Be Precluded.

The defendants are charged with an offense that carries a substantial penalty:  a mandatory

minimum term of imprisonment of ten years and a maximum term of imprisonment of life.  *See*

18 U.S.C. § 841(b)(1)(A).  Defense counsel should be precluded from mentioning these or other

potential consequences of conviction to the jury.

It is well-established that the jury's function is to find the facts and to determine whether,

based on those facts, the defendant is guilty of the crime charged.  *See Shannon v. United States*,

512 U.S. 572, 579 (1994).  The judge, by contrast, imposes sentence on the defendant after the

jury has arrived at a guilty verdict.  *See id.*  Consequently, any introduction of the topic of sentenc-

ing or other consequences of conviction—whether through cross-examination or argument—

would be manifestly improper and an invitation for the jury to engage in nullification.  The jury

"should be admonished to 'reach its verdict without regard to what sentence might be im-

posed.'"  *Id.* (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).  This is so for good reason:

argument concerning punishment "invites [jurors] to ponder matters that are not within their prov-

ince, distracts them from their factfinding responsibilities, and creates a strong possibility of con-

fusion."  *Id.; see also United States v. Riley*, No. 13 Cr. 339 (VEC), 2014 WL 3435721, at *2

(S.D.N.Y. July 14, 2014).

For these reasons, the Government respectfully requests that defense counsel be pre-

cluded from mentioning to the jury the consequences the defendants would face if convicted.

**VIII.   Evidence or Argument Concerning the Defendants' Family Backgrounds, Health Conditions, Ages, Financial Status, or Any Other Personal Factors Unconnected to Guilt Should Be Precluded**

Similarly, the Court should preclude the defendants from introducing evidence concerning their personal circumstances in an effort to elicit juror sympathy because they are irrelevant and their introduction would risk confusing and distracting the jury from the issues properly before it.

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Evidence of a defendant's addictions and/or any financial difficulties is simply irrelevant to proving, or disproving, any of the elements of the charged narcotics conspiracy. Evidence that does not go towards the elements of the charged offense is properly excluded under Rules 401 and 402. *See, e.g.*, *United States v. Fiumano*, No. 14 Cr. 518 (JFK), 2016 WL 1629356, at *6 (S.D.N.Y. Apr. 25, 2016). The only purpose for such evidence would be to curry sympathy from the jury. *See, e.g.*, *United States v. Edwards*, 101 F.3d 17, 20 (2d Cir. 1996) (approving district court's decision to prohibit any argument in support of jury nullification).

There is no proper basis for the defendants to offer evidence or argument concerning their family background, health, age, addictions, financial status, or any other similar factors. Defense counsel should be precluded from doing so, and from mentioning such subjects in the opening statement, absent a proffer that such factors bear on guilt. *See, e.g., United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the

crimes charged"); *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Even if such evidence were relevant, which it is not, it should still be excluded under Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and causing undue delay.  The introduction of such facts would serve only to elicit jury sympathy and distract the jury from determining whether the Government has met its burden of proof.  Needlessly injecting these facts into this trial would potentially confuse and mislead the jury as to the issues to be decided in this case.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully submits that the Court grant the Government's motion in its entirety.

Dated: New York, New York
      May 19, 2022

                                    Respectfully submitted,

                                    DAMIAN WILLIAMS
                                    United States Attorney for the
                                    Southern District of New York

By:    /s/_____
           Ryan B. Finkel
           Alexander Li
           Andrew Rohrbach
           Assistant United States Attorneys
           (212) 637-2218/-2265 /-2345