

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 7, 2022

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:  **United States** v. **Reginald Claxton**, S1 20 Cr. 631 (AKH)

Dear Judge Hellerstein:

    The Government respectfully writes in advance of trial in the above-captioned case to request a ruling *in limine* permitting the Government: (1) to introduce statements made by a confidential source ("CS-1") to law enforcement officers after conducting controlled narcotics purchases during the investigation of this case; and (2) to the extent a law enforcement witness "cannot recall well enough to testify fully and accurately" permit the law enforcement witness to read into evidence police reports "adopted by the witness when the matter was fresh in the witness's memory" pursuant to Federal Rule of Evidence 803(5).

    A.  Background

    The charges against Reginald Claxton (the "defendant") arise following a more-than-one-year investigation by the New York City Police Department ("NYPD") and United States Department of Homeland Security, Homeland Security Investigations ("HSI") centered on Claxton's co-defendant Kenneth Spearman's crack-cocaine trafficking crew, which was primarily located in a three-block area of Seventh Avenue, from approximately 120th Street to 123rd Street, in Harlem. Claxton – one of Spearman's co-conspirators – manufactured crack-cocaine, delivered crack-cocaine to customers, collected narcotics proceeds and supported the operation. One of the investigative tools employed by the NYPD and HSI during the investigation was the use of a particular paid confidential source ("CS-1") who conducted controlled narcotics purchases from Claxton, Spearman and other co-conspirators. In total, CS-1 conducted approximately 45 controlled purchases during the investigation of this case. The Government intends to offer into evidence the details of approximately 14 of those controlled purchases at trial.

    The Government anticipates that both CS-1 and Sgt. Ian Scheinblum will testify at trial. Sgt. Scheinblum was one of the NYPD officers who directed CS-1's controlled purchases, monitored CS-1's controlled purchases from a nearby unmarked NYPD car, collected narcotics purchased by CS-1, and debriefed CS-1 after the controlled purchases. Given the number of

controlled purchases in this case, neither CS-1 nor Sgt. Scheinblum recall with specificity the exact dates and details of each controlled purchase. Indeed, Sgt. Scheinblum estimates that during the year this case was investigated, he participated in more than one hundred controlled purchases in other cases.

Following each controlled purchase, CS-1 was debriefed by Sgt. Scheinblum and/or another detective. Typically, CS-1 would either place a brief phone call to the surveilling NYPD officers advising that the controlled narcotics purchase had taken place and identifying the person who delivered the drugs, or, CS-1 would go directly to the NYPD vehicle to debrief with the officers. In some instances, officers equipped CS-1 with a recording device that recorded both the controlled purchase and either CS-1's phone call to law enforcement or CS-1's return to the vehicle. On six such recordings, portions of which the Government intends to offer at trial, CS-1 called the surveilling NYPD officers, or returned to the NYPD vehicle, and stated from whom he received narcotics. Those recordings evidence that CS-1 declared from whom the narcotics were purchased minutes after perceiving the event. Specifically, CS-1 informed the officers of the identity of who provided the narcotics approximately six minutes after the July 24, 2020 buy; approximately one minute after the July 31, 2020 buy; approximately 16 minutes after the August 12 buy; approximately 14 minutes after the August 18 buy; and approximately six minutes after the October 20 buy. As an example, attached as Exhibit A is a transcript of CS-1's recorded call to a detective identifying the defendant ("Dread") approximately one minute after the defendant delivered the drugs. (Ex. A.)

To document each of CS-1's controlled purchases, an NYPD detective prepared a police report detailing the circumstances of each purchase. With respect to the approximately 14 controlled purchases, the Government seeks to introduce at trial, NYPD reports, which were adopted by Sgt. Scheinblum, describing the details of each purchase when those events were fresh in his memory. A sample of one of the reports, which corresponds to the controlled purchase described in Exhibit A, is attached as Exhibit B. As indicated in Exhibit B, each report contains information such as the date of the controlled purchase, the location, the amount of U.S. currency provided to CS-1 to purchase narcotics, the amount of narcotics CS-1 purchased, and CS-1's statement regarding who provided him the purchased narcotics.

The Government intends to offer at trial CS-1's contemporaneous statements describing the controlled purchases, including the fact of the buy and the identities of the persons involved, through: (i) audio recordings of CS-1 describing the transaction, made shortly after the transaction occurred (as transcribed in Exhibit A); and (ii) by Sgt. Scheinblum reading, as a recorded recollection, NYPD reports describing CS-1's statements (as shown in Exhibit B).

B. Applicable Law

1. *Present Sense Impression*

A present sense impression is an exception to the hearsay rule, and available regardless of whether the declarant is available as a witness. *See* Fed. R. Evid. 803. It is "derived from the belief that contemporaneous statements about observed events leave less time to forget or fabricate and, therefore, tend to be reliable." *United States v. Gonzalez*, 764 F.3d 159, 169 (2d Cir. 2014). Rule

803(1) allows a statement to be admitted where the statement "describe[s] or explain[s] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). Thus, to be admissible a statement must describe or explained an event perceived by the declarant, the declarant must have in fact perceived the event and, the statement must be made while the event is perceived or immediately thereafter. *See* Fed R. Evid. 803(1). However, "precise contemporaneity is not required." *United States v. Steele*, 216 F. Supp. 3d 317, 321-22 (S.D.N.Y. 2016) (quotation omitted). Indeed, "even where a longer time has passed between the events and the statement describing them, admission under Rule 803(1) can be 'buttressed by the intrinsic reliability of the statements.'" *United States v. Steele*, 216 F. Supp. 3d 317, 322 (S.D.N.Y. 2016).

    *2. Recorded Recollection*

Rule 803(5) is an exception to the hearsay rule for recorded recollections. To constitute such a recorded recollection, a writing must:

> concern[] a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, [and be] shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

Before a writing can be read into evidence, the party offering the writing must establish (1) the author's memory of the events detailed in the memorandum was sufficiently impaired; (2) he prepared or adopted the memorandum at or near the time of the events; and (3) at the time he prepared or adopted it, it correctly reflected his knowledge of the events. *Parker v. Reda*, 327 F.3d 211, 213 (2d Cir. 2003).

C. <u>Discussion</u>

The Government should be permitted to offer CS-1's statements regarding the identity of the individual from whom he acquired narcotics, and other details of the controlled purchases, through the buy recordings and Sgt. Scheinblum's testimony. With respect to CS-1's statements in the NYPD reports, there are two levels of hearsay potentially applicable: first, CS-1's statement about who he acquired narcotics from, which is admissible as a present sense impression; and, second, the NYPD report containing CS-1's statement, which may be read into the record by Sgt. Scheinblum as a recorded recollection. Both levels of hearsay are overcome, and thus, CS-1's statement should be admitted at trial. In addition, and irrespective of the Court's ruling regarding CS-1's statements, the Government should be permitted to offer information in the NYPD reports adopted by Sgt. Scheinblum, to the extent they contain details of the controlled purchases that Sgt. Scheinblum once knew but cannot now recall with sufficient clarity.

    *1. Present Sense Impression*

As an initial matter, CS-1's statement regarding whom he received narcotics from is descriptive of what CS-1 observed. *See Brown v. Keane*, 355 F.3d 82, 89–90 (2d Cir. 2004) ("[t]he

present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures").

With respect to the timing of the statement, CS-1 declared what he observed—the individual who provided him narcotics—soon after CS-1 observed it. While the precise time between the observation and CS-1's statements to the surveilling agents necessarily varied after each controlled purchase, the recordings described above indicate CS-1 generally made the statements within minutes of the observation and no longer than 16 minutes after the event. In addition, the Government anticipates that testimony from CS-1 and Sgt. Scheinblum will establish that after conducting the controlled purchase it was CS-1's practice to thereafter either call or return to the NYPD officers, inform them about the details of the controlled purchase, and provide the officers the narcotics CS-1 acquired. Thus, even in the instances where the statements were made several minutes after CS-1 perceived the event, that is not a bar to their admissibility. *See United States v. Ibanez*, 328 F. App'x 673, 676 (2d Cir. 2009) ("The statement concerning the color of the tee-shirt was made several minutes after perception" admissible as present sense impression); *United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir.1995) (911 call made several minutes after incident sufficiently contemporaneous to be a present sense impression), *vacated on other grounds*, 516 U.S. 1168, 116 S.Ct. 1257, 134 L.Ed.2d 206 (1996); *United States v. Mejia-Valez*, 855 F. Supp. 607, 614 (E.D.N.Y. 1994) (911 call made 16 minutes after event admissible as present sense impression).

Further weighing in favor of admissibility is that CS-1's statements to the officers regarding who provided him narcotics are "buttressed by the intrinsic reliability of the statements" for at least three reasons *Steele*, 216 F. Supp. at 322. *First*, several of the purchases the Government seeks to introduce were recorded. The recordings corroborate CS-1's statements. The recordings evidence the voices of the individuals from whom CS-1 purchased the narcotics and underscore the reliability of CS-1's declaration to the officers that those individual in fact provided him crack cocaine. *Second*, on several occasions, Sgt. Scheinblum himself observed CS-1 interact with the individuals from whom CS-1 acquired the narcotics.[1] Indeed, on one occasion Sgt. Scheinblum observed Claxton walking to CS-1 and a photograph of that event—Claxton crossing Lennox Avenue to deliver crack cocaine to CS-1—will be offered into evidence at trial. Sgt. Scheinblum's testimony corroborates some of CS-1's purchases further demonstrating the intrinsic reliability of CS-1's statements to officers after the controlled purchases. *Third*, the controlled purchases all occurred in the vicinity of 122nd Street and 7th Avenue, which multiple trial witnesses will establish was the area where Spearman maintained a location from which he and his associates, including Claxton, distributed crack contain to dozens and dozens of customers. Thus, the acquisition of narcotics by CS-1 from Spearman or his co-conspirators, including Claxton, is consistent with other testimony in the case. *See Mejia–Valez*, 855 F. Supp. at 614 (E.D.N.Y. 1994) (explaining a call recording was admissible under the present sense impression because the call "was consistent with [the declarant's] first call and with the other testimony in the case").

---

[1] Unfortunately, given the sheer volume of controlled purchases performed Sgt. Scheinblum was involved in he cannot recall the details of each sufficient to testify. He can, however, provide general details of individuals he recalled observing interacting with CS-1 including Claxton and Spearman.

It is also important to emphasize that CS-1 will testify at trial. Thus, the defendant will be able to confront CS-1 and cross-examine CS-1 regarding the statements he made after the controlled purchases. *See Ibanez*, 328 F. App'x at 676 (affirming and explaining that even if 803(1) statement was not contemporaneous "the [declarant] was available for cross-examination, so that his basis for the statement could be tested."). Accordingly, CS-1's statements to the officers, either in the buy recordings or the NYPD reports, following his controlled purchases are admissible as present sense impressions.[2]

### 2. NYPD Reports Adopted by Sgt. Scheinblum Are a Recorded Recollection

The Government should be permitted to have Sgt. Scheinblum read the NYPD reports containing the circumstances of the controlled purchase once known by Sgt. Scheinblum such as the date, time and location of the purchases, the amount of money provided to CS-1 and the quantity of narcotics CS-1 provided to the NYPD after the controlled purchase, and, to the extent the Court agrees with the Government on the prior issue, statements made by CS-1 regarding who provided him narcotics. This evidence is admissible under the recorded recollection exception to the hearsay rule. *See* Fed. R. Evid. 803(5). The Government expects Sgt. Scheinblum to testify that his memory of each of CS-1's controlled purchases are blurred by his participation in hundreds of controlled purchases that year and in his sixteen year career with the NYPD. Sgt. Scheinblum is further expected to testify that at the time he approved the NYPD reports, which was generally within a day or so after report was drafted, they accurately reflected (i) information provided by CS-1; and (ii) the circumstances of the controlled purchase Sgt. Scheinblum once recalled. Accordingly, Sgt. Scheinblum should be permitted to read from the NYPD reports at trial. *See United States v. Kortright*, No. 10 CR 937 KMW, 2011 WL 4406352, at *12 (S.D.N.Y. Sept. 13, 2011) (affirming admission of testimony by officer who read at trial "grand jury testimony [that] was given . . . nearly two months after Defendant's arrest [because] . . . at the time [the officer] gave his grand jury testimony, the events were fresh in his mind."); *United States v. Garcia*, 282 F. App'x 14, 23 (2d Cir. 2008) (affirming police officers reading from "arrest reports and booking sheets under the recorded recollection exception to the hearsay rule").

---

[2] As further detailed in the Government's Motions In Limine, *see* ECF No. 224, at 17-18, to the extent that the defense attacks CS-1's credibility, CS-1's statements to the NYPD officers are also admissible as prior consistent statements. *See* Federal Rule of Evidence 801(d)(1)(B)(i).

    D.  Conclusion

The Court should permit the Government to (1) to introduce CS-1's statements regarding the fact of the controlled purchase and the identity of who provided CS-1 narcotics during a controlled purchase, to the extent those statements are either audio-recorded or reported in NYPD reports adopted by Sgt. Scheinblum; and (2) read into evidence police reports adopted by Sgt. Scheinblum regarding details of approximately 14 controlled purchases by CS-1.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/_____
Alexander Li
Andrew Rohrbach
Ryan Finkel
Assistant United States Attorneys
(212) 637-2265/2345/6612

CC:    Daniel McGuinness, Esq., counsel to defendant Reginald Claxton (*by ECF*)